O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANCISCO MANZO, | Case No. SACV 10-1848-OP |
| Plaintiff, | |
| v. | MEMORANDUM OPINION; ORDER |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

The Court[1] now rules as follows with respect to the disputed issues listed in the Joint Stipulation ("JS").[2]

/ / /

/ / /

/ / /

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the United States Magistrate Judge in the current action. (See ECF Nos. 6, 8.)

[2] As the Court stated in its Case Management Order, the decision in this case is made on the basis of the pleadings, the Administrative Record, and the Joint Stipulation filed by the parties. In accordance with Rule 12(c) of the Federal Rules of Civil Procedure, the Court has determined which party is entitled to judgment under the standards set forth in 42 U.S.C. § 405(g).

## I.
## **DISPUTED ISSUES**

As reflected in the Joint Stipulation, the disputed issues raised by Plaintiff as the grounds for reversal and/or remand are as follows:

(1) Whether the administrative law judge ("ALJ") properly considered all of Plaintiff's severe impairments;

(2) Whether the ALJ properly considered Plaintiff's testimony;

(3) Whether the ALJ properly relied on the opinion of Dr. Timothy Ross, a consultative examining physician; and

(4) Whether the ALJ properly considered the opinion of Dr. David Sanchez, a treating physician.

(JS at 2.)

## II.
## **STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (citation omitted). The Court must review the record as a whole and consider adverse as well as supporting evidence. Green v. Heckler, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984).

# III.
# DISCUSSION

### A. The ALJ's Findings.

The ALJ found that Plaintiff has the medically determinable severe impairment of discogenic and degenerative back disorder. (Administrative Record ("AR") at 13.) The ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform sedentary work. (Id.) Specifically, the ALJ found the following: Plaintiff can occasionally lift and carry twenty pounds, and frequently lift and carry ten pounds; stand and walk for two hours in an eight-hour workday with normal breaks; and sit for six hours in an eight-hour workday. (Id.) The ALJ also found that Plaintiff cannot climb ladders, ropes, or scaffolds, and is precluded from reaching with his right upper extremity at or above shoulder level. (Id.)

### B. The ALJ's Consideration of Plaintiff's Impairments.

At step two, a claimant must make a threshold showing that his medically determinable impairments significantly limit his ability to perform basic work activities. See Bowen v. Yuckert, 482 U.S. 137, 146, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987); 20 C.F.R. §§ 404.1520(c), 416.920(c). "Basic work activities" refers to "the abilities and aptitudes necessary to do most jobs," including walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling, seeing, hearing, speaking, understanding, carrying out and remembering simple instructions, using judgment, and dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b), 416.921(b). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'" Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996) (quoting Social Security Ruling ("SSR") 85-28). "[T]he step two inquiry is a de minimis screening device to dispose of groundless claims." Id. (citing Bowen, 482 U.S. at 153-54). An ALJ is also required to consider the "combined effect" of an

individual's impairments in considering severity. Id.

Plaintiff alleges that his shoulder, knee, and wrist impairments, as well as his poliomyelitis, were severe impairments that the ALJ failed to consider. (JS at 3, 7-8.) The record reflects several diagnoses related to Plaintiff's impairments within the relevant period. First, Plaintiff was diagnosed with osteoarthritis and tendinitis in his left shoulder, as well as left shoulder impingement syndrome. (AR at 191-92, 195-96, 290-92, 332-34, 344, 346, 357, 359, 361, 365-66, 373-75, 378, 523, 638-39, 658-59, 682.) Second, Plaintiff was diagnosed with an oblique tear of the left knee, internal derangement of both knees, and small joint effusion of both knees. (Id. at 210, 213, 219, 224, 226-29, 259-60, 278, 332, 334, 352, 378, 485-86, 523, 571-72, 617, 658-59, 663, 681-82.) Third, Plaintiff was diagnosed with a small ganglion cyst/fluid collection at the distal ulna. (Id. at 483.) These diagnoses were based on objective medical evidence, including physical examinations and radiological studies. (Id. at 290, 329-32, 483, 485-86, 571-72, 638-39.) Several physicians opined that these conditions affected Plaintiff's ability to perform basic work-related activities. (Id. at 290-92, 334, 483, 523, 658-59, 620.) Additionally, the medical records contained several references to Plaintiff's poliomyelitis, and he testified about this condition and the related pain and limitations at the administrative hearing. (Id. at 253, 672-73, 676-77, 679, 713, 718, 726-29.) This evidence suggests that Plaintiff's shoulder, knee, and wrist impairments, and his poliomyelitis, might have met the de minimis severity standard of step two.

Here, the ALJ provided only the following brief statement regarding the severity of Plaintiff's impairments: "Through the date last insured, the claimant had the following severe impairments: disorders of the back (discogenic and degenerative) (20 CFR 404.1520(c))." (AR at 13.) It is not clear from this statement how the ALJ determined that Plaintiff's sole severe impairment was his back disorder. Nor is it clear the extent to which, if any, the ALJ reviewed the

medical records and considered Plaintiff's other impairments for the purpose of determining their severity. The Commissioner asserts that the ALJ properly relied on the opinion of the State Agency reviewing physician, Dr. Francis T. Greene. (JS at 6.) To the extent the Commissioner relies on the ALJ's similarly brief statement at step three, "[t]his conclusion is supported by the opinion of the State Agency consultant, with which I concur" (id. at 13), such reliance is unavailing.

First, the Court notes that the ALJ did not refer specifically to Dr. Greene's opinion at steps two or three, nor did he provide citations to Dr. Greene's opinion, so it is not clear that the ALJ in fact relied on Dr. Greene's opinion at steps two or three. (AR at 13.) Even assuming that the ALJ relied on Dr. Greene's opinion, the record reflects that Dr. Greene diagnosed Plaintiff with three conditions: degenerative disease of the right shoulder; internal derangement and meniscus tear of the left knee; and discogenic and degenerative disease of the cervical and lumbar spine. (Id. at 617.) The ALJ does not explain why, since he concurred with Dr. Greene's opinion, he did not include Dr. Greene's additional diagnoses as severe impairments.

The Ninth Circuit has concluded that any error at step two is harmless when an ALJ accounts for impairment-related limitations in subsequent steps of the disability evaluation. See Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007). Here, there is no indication that the ALJ properly considered the impact of Plaintiff's shoulder, wrist, and knee impairments, and/or poliomyelitis at later steps. For example, at step three, the ALJ stated:

> Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526). . . . This conclusion is supported by the opinion of the State Agency consultant, with which I concur.

(Id. at 13.) However, the record reflects that Dr. Greene did not provide an opinion as to whether Plaintiff's impairments met or equaled a listed impairment. (Id. at 617-24.) The Court cannot determine from this brief statement whether the ALJ considered the evidence of Plaintiff's additional limitations in determining that Plaintiff's impairments did not meet or equal a listed impairment. See James v. Apfel, 174 F. Supp. 2d 1125, 1130 (W.D. Wash. 2001) (quoting Marcia v. Sullivan, 900 F.2d 172, 176 (9th Cir. 1990) ("The record must reflect that an ALJ has 'actually considered equivalence' and simply making a finding that plaintiff's impairments do not meet or equal a listing is insufficient.")).

Further, at step four, the ALJ did not include any functional limitations related to Plaintiff's additional impairments. After providing an extensive summary of the medical records (id. at 14-17), the ALJ stated:

> Based upon my thorough evaluation of the evidence of record as a whole, and the testimony, I agree with the State Agency consultant, Dr. Ross[3] and find the claimant's impairments are not of listing level, nor are they disabling. However, I believe that the claimant's physical impairments do not significantly reduce his ability to perform generally sedentary work, which is more restrictive than Dr. Ross's RFC.

(Id. at 17.)

---

[3] It is not clear from this statement whether the ALJ agreed with the opinion of Dr. Ross, the consultative examining physician, and/or the opinion of the State Agency reviewing physicians, Dr. Greene and Dr. Richard May. The Court assumes that the ALJ referred to Dr. Greene's opinion based on as the ALJ's previous references to Dr. Greene's opinion in the written decision. (Id. at 17.) However, the Court notes the ALJ made subsequent references to the "State Agency consultant" that were equally unclear, as the ALJ did not specify the name of the State Agency consultant or the citations to the medical records. (Id. at 18.) Additionally, it is not clear that Dr. Ross served as an "agency doctor" (id.) or "State Agency consultant" (id. at 17), despite the ALJ's numerous references to him as such.

This statement, with its vague reference to "impairments," does not reflect any consideration by the ALJ of Plaintiff's additional impairments. The ALJ did not include any of Dr. Greene's limitations to occasional balancing, stooping, kneeling, crouching, and crawling for Plaintiff. (Id. at 620.) These limitations likely were based on Dr. Greene's diagnosis of internal derangement and meniscus tear of the left knee, but, as discussed above, the ALJ provided no analysis regarding this opinion. Similarly, Dr. Isaac Schmidt, Plaintiff's treating physician, imposed functional limitations on Plaintiff related to his left shoulder (id. at 205, 292, 334) and right wrist (id. at 334). The ALJ merely summarized this evidence, without explaining why he did not include these limitations in his RFC assessment. Thus, it is unlikely the ALJ considered Plaintiff's shoulder, wrist, and knee impairments, and/or poliomyelitis alone or in combination with his other impairments at subsequent steps in the evaluation process.

Even if the evidence does not establish that Plaintiff's diagnosed shoulder, wrist, and knee impairments, and/or poliomyelitis cause more than a "slight abnormality," the ALJ erred by failing to address them at step two and by failing to consider their effects in combination with other severe impairments throughout the sequential evaluation process. Accordingly, the Court finds the ALJ's error in failing to address Plaintiff's shoulder, wrist, knee impairments, and poliomyelitis was not harmless. Thus, this matter must be remanded to the Commissioner to consider Plaintiff's additional alleged impairments.

C. **The ALJ's Consideration of Plaintiff's Testimony.**

Plaintiff contends that the ALJ's credibility finding was improper because the ALJ provided legally insufficient reasons to reject Plaintiff's testimony. (JS at 9-12, 14-16.) At the November 17, 2009, administrative hearing, Plaintiff testified that his "predominant pain" was in his lower back, neck, right shoulder, left and right knees, right wrist, and feet. (AR at 30.) Plaintiff testified that he did not have much strength with his right shoulder, his left knee caused him much pain

due to a torn meniscus, and his feet and arms "go numb." (Id. at 30, 33-34.) Additionally, Plaintiff testified that he wore a leg brace on his right leg on the day of the hearing because "my right leg was dead from here on down, I have no strength. If I stand I can't, and if I move too much I can't support myself." (Id. at 34.) In response to the ALJ's question regarding how Plaintiff spends his days, Plaintiff testified, "with a lot of the problems and pain because I have to sit for a while, stand up. I walk a little bit to the yard. Sometimes I go and lie down for a while. That's what I do all day long." (Id. at 32.) Plaintiff further testified that he lies down "about five to six times" during the day for approximately fifteen to twenty minutes at a time due to his back pain. (Id. at 34.)

### 1. **Legal standard.**

An ALJ's assessment of pain severity and claimant credibility is entitled to "great weight." Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1986). When, as here, an ALJ's disbelief of a claimant's testimony is a critical factor in a decision to deny benefits, the ALJ must make explicit credibility findings. Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990); Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir. 1981); see also Albalos v. Sullivan, 907 F.2d 871, 874 (9th Cir. 1990) (an implicit finding that claimant was not credible is insufficient).

Under the "Cotton test," where the claimant has produced objective medical evidence of an impairment which could reasonably be expected to produce some degree of pain and/or other symptoms, and the record is devoid of any affirmative evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of the claimant's pain and/or other symptoms only if the ALJ makes specific findings stating clear and convincing reasons for doing so. See Cotton v. Bowen, 799 F.2d 1403, 1407 (9th Cir. 1986); see also Smolen, 80 F.3d at 1281; Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993); Bunnell v. Sullivan, 947 F.2d 341, 343 (9th Cir. 1991).

To determine whether a claimant's testimony regarding the severity of his symptoms is credible, the ALJ may consider, *inter alia*, the following evidence: (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; and (4) testimony from physicians and third parties concerning the nature, severity, and effect of the claimant's symptoms. Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); see also Smolen, 80 F.3d at 1284. The Social Security Rulings further provide that an individual may be less credible for failing to follow prescribed treatment without cause. SSR 96-7p.

### 2. The ALJ's Findings.

Here, the ALJ provided several reasons to support his findings that "claimant [is] not credible and his testimony regarding the severity and impact of his impairments [is] not supported by the medical evidence of record" and "the claimant's medically determinable impairments could not reasonably be expected to cause such severe symptoms." (AR at 17.) Specifically, the ALJ stated:

> For the following reasons, I find the claimant not credible and his testimony regarding the severity and impact of his impairments not supported by the medical evidence of record. The claimant subjectively claims disabling low back pain, neck pain, shoulder pain, hand pain, knee pain, and leg pain. At the hearing, the claimant was observed to be muscular without any assistive devices. He testified that he lies down most of the day due to his alleged impairments. After careful consideration of the evidence, I find that the claimant's medically determinable impairments could not reasonably be expected to cause such severe symptoms. The claimant's statements concerning the

intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the medical findings. Furthermore, [w]here there is affirmative evidence of malingering, an ALJ need not provide "clear and convincing" reasons for rejecting the claimant's testimony regarding the severity of symptoms. . . . The claim [sic] gave limited effort during his examination by the agency doctor.

The relevant medical evidence in the file fails to support the claimant's subjective complaints. First, the record does not corroborate the claimant's statements that he lies down most of the day. He never told his doctors that he lies down all day. Nor, despite complaining that he lies down most of the day, has a physician noted such severe symptoms or provided invasive treatment in an attempt to restore functionality. His treatment has been sporadic, and there are no neurological deficits. There are no abnormal x-rays and/or imaging reports, which fully support the claimant's alleged impairments. The claimant is well developed with exceptional muscle tone. It is hard to believe that the claimant lies down most of the day and does nothing and yet has the degree of muscular physique he possessed at the hearing. It remains a mystery as to the absence in the medical records of the claimant's degree of inactivity that reaches near incapacitation and yet does not tell his own doctors of this severe restriction. It defies credulity that a patient would go into a doctor's office for treatment and yet not inform his own physician that he is restricted. It is inconceivable that the claimant does not work out in the gym with his muscular built body [sic] nor given that he claims not to have worked in seven years. The claimant testified that he lies down most of the day. These claims of inactivity combined with his lack of effort on the physical examination by the agency doctor together with his physical appearance are

incompatible and irreconcilable. Dr. Ross also noted that the claimant received much unneeded care based on subjective complaints and not unexpected [sic] to have zero impairment from this unneeded care.

Additionally, the claimant's symptoms are not so disabling that he is unable to engage in activities typical of most individuals and I question his credibility. In Dr. Ross's orthopedic consultative examination dated February 6, 2008, the claimant was noted to be well-nourished man [sic] and weighing at [sic] 191 pounds. The claimant lives with his wife and six children. Dr. Ross stated that the claimant had no sitting, standing, walking, lower and left upper extremity functional limitations.

Further, I question the claimant's credibility and find him not credible. The claimant gave limited effort on range of motion tests. Second, I do not accord great weight to Dr. Sanchez's [RFC] in Exhibit 28F. There is limited evidence in objective findings for this restrictive RFC, and is just a tad bit shy of a logical connection to a physical health diagnosis. Also, there is no evidence of further treatment or intervention that would support limiting the claimant's physical RFC, as opined by the State Agency consultant.

The medical record does not document significant side effects from medications and where problems were noted, the medications were adjusted. I find that in considering as a whole, symptoms, clinical signs, and laboratory findings are not consistent with the claimant's allegations.

(Id. at 18.)

/ / /
/ / /
/ / /

3.  **Analysis.**

The Court will address each of the reasons provided by the ALJ below.

a.  **Evidence of malingering.**

Although the ALJ did not make a clear finding that Plaintiff was malingering, the ALJ noted that "the claim [sic] gave limited effort during his examination by the agency doctor" and "claimant gave limited effort on range of motion tests."[4] (Id. at 18.) However, Dr. Ross' speculation regarding Plaintiff's alleged failure to give full effort during range of motion tests is not affirmative evidence of malingering. No other examining physician opined that Plaintiff gave limited effort on a range of motion test (id. at 218, 258, 288, 493-94, 718), and Dr. Schmidt noted that Plaintiff gave "his best effort" on several grip strength tests (id. at 330, 519). Thus, the Court finds that Plaintiff's alleged lack of effort on Dr. Ross' range of motion test was not a clear and convincing reason for rejecting Plaintiff's testimony.

b.  **The ALJ's personal observations.**

When an ALJ includes personal observations of a claimant during the hearing, the decision is not improper if other evidence supports the determination. Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1986); Drouin v. Sullivan, 966 F.2d 1255, 1258–59 (9th Cir. 1992) (observations of ALJ during the hearing, along with other evidence, is substantial evidence for rejecting testimony). Here, the ALJ made numerous references to Plaintiff's alleged "muscular built body [sic]." (AR at 18.) However, it is not clear that the ALJ's subjective interpretation of Plaintiff's physical appearance at the administrative hearing or the ALJ's speculation as to how Plaintiff achieved such a physical appearance relates to the ALJ's discussion of Plaintiff's credibility. Additionally, the ALJ does not specify the other evidence in the record that is consistent with his observation. Several

---

[4] Dr. Ross noted in his report that Plaintiff gave limited effort on range of motion testing. (Id. at 556.)

physicians noted that Plaintiff appeared well-nourished, well-developed, and/or in good health, but none of them remarked that Plaintiff had an especially muscular appearance. (Id. at 227, 257, 556.) Thus, the Court finds that the ALJ's personal observation was not a clear and convincing reason for rejecting Plaintiff's testimony.

### c. Plaintiff's daily activities.

When a claimant spends a substantial part of the day "engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit a claimant's allegations." Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999) (citing Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)). For example, a claimant's ability to cook, clean, do laundry and manage finances is sufficient to support an adverse finding of credibility. See Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1175 (9th Cir. 2008); see also Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005) (the claimant's activities "suggest she is quite functional. She is able to care for her own personal needs, cook, clean and shop. She interacts with her nephew and boyfriend. She is able to manage her own finances . . ."). However, an ALJ must make a specific finding relating to the transferability of the activities to a workplace to refute a plaintiff's allegations of disability. Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007).

Here, the ALJ made a brief finding that "the claimant's symptoms are not so disabling that he is unable to engage in activities typical of most individuals and I question his credibility." (AR at 18.) In support of his finding, the ALJ referred to Dr. Ross' observation that Plaintiff appeared well-nourished and weighed 191 pounds at his February 6, 2008, physical examination, and the ALJ noted that Plaintiff lived with his wife and six children. (Id.) However, the ALJ did not specify the "activities typical of most individuals" in which Plaintiff himself engaged, despite his alleged pain, that demonstrate that he was not credible. Nor

did the ALJ provide an explanation for how these unspecified "typical" activities, Plaintiff's living situation, and/or his physical appearance preclude Plaintiff from engaging in any work-related activities or are transferable to a work setting, such that they would cast doubt on Plaintiff's credibility. See Orn, 495 F.3d at 639 (the ALJ erred in failing to "meet the threshold for transferable work skills, the second ground for using daily activities in credibility determinations"); Lewis v. Apfel, 236 F.3d 503, 517 (9th Cir. 2001) (limited activities did not constitute convincing evidence that the claimant could function regularly in a work setting). Further, it is not clear how the ALJ intended for his recitation of Dr. Ross' functional limitations for Plaintiff to relate to the discussion of Plaintiff's daily activities or his credibility generally. The ALJ provided no additional analysis. Thus, the Court finds that Plaintiff's alleged daily activities were not a clear and convincing reason for rejecting Plaintiff's testimony.

### d. Conservative treatment and medications.

In assessing Plaintiff's credibility about his symptoms, the ALJ may consider "the type, dosage, effectiveness, and side effects of any medication." 20 C.F.R. § 404.1529(c). Further, the treatment Plaintiff received, especially when conservative, is a legitimate consideration in a credibility finding. See Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (the ALJ properly considered the physician's failure to prescribe, and the claimant's failure to request, medical treatment commensurate with the "supposedly excruciating pain" alleged). The Ninth Circuit has "indicated that evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." Parra v. Astrue, 481 F.3d 742, 750 (9th Cir. 2007).

Here, the ALJ's conclusory determination that Plaintiff's pain allegations were not credible because his treatment was sporadic is belied by the record. The ALJ did not identify any significant breaks in Plaintiff's treatment. In contrast, the record reflects that Dr. Schmidt saw Plaintiff on a fairly regular basis between

2003 and 2008. (AR at 191-246, 323-48, 351-424, 507-54, 641-67, 680-89, 704-10, 712-13). Additionally, between 2003 and 2009, Plaintiff was examined by other physicians (id. at 425-55, 456-61, 476-506, 555-60, 605-10, 629-32, 672-74, 676-79) and received a variety of treatments, including surgery on his right shoulder, (id. 349-50) steroid injections in his shoulders (Id. at 199-200), acupuncture (id. at 476-82), physical therapy (id. at 252-54, 344, 456-61, 533), and a leg brace (id. at 34). As noted above, Dr. Schmidt repeatedly sought authorization to perform surgery on Plaintiff's left shoulder. (Id. at 357, 365-66, 374, 378, 546.) It is not clear why the ALJ referred to the lack of side effects of Plaintiff's medications (id. at 18), or how the lack of side effects reflected poorly on Plaintiff's credibility. Plaintiff was prescribed pain medication by his physicians (id. at 219, 224, 236, 241, 277, 335-36, 369, 371, 389, 398, 403, 411, 413, 415, 417, 422, 448, 463, 651, 677), but Plaintiff did not complain of any side effects due to the medication.

    Relatedly, the ALJ's finding that there were "no abnormal x-rays and/or imaging reports which fully support the claimant's alleged impairments" (id. at 18) is not supported by the record. As discussed above, the following imaging reports were included in Plaintiff's medical records: MRI reports showing small joint effusion in Plaintiff's left and right knees (id. at 485-86); MRI report showing an oblique tear of Plaintiff's left knee (id. at 571); MRI report showing bulging discs and spondylitic ridge in Plaintiff's cervical spine (id. at 575); MRI report showing mild facet joint osteoarthritis in Plaintiff lumbar spine (id. at 577-78); MRI report showing disc bulge and spur with mild left neural foraminal stenosis in Plaintiff's cervical spine (id. at 626); MRI report showing marked severe acromioclavicular joint hypertrophy with moderate impingement in Plaintiff's right shoulder (id. at 627); positive discogram of Plaintiff's cervical spine (id. at 635-36); MRI report showing supraspinatus tendinitis and acromioclavicular osteoarthritis with edema in Plaintiff's left shoulder (id. at 638-

39); MRI report showing multilevel facet degenerative osteoarthritis in Plaintiff's lumbar spine (id. at 700); and EMG report showing right chronic L5 radiculopathy (id. at 715). It is not clear why the ALJ found that there were no abnormal x-ray or imaging reports, as the ALJ referred to each of the reports cited above in his summary of the medical evidence. (Id. at 14-17.)

Based on the foregoing, the Court finds that Plaintiff's alleged conservative treatment and lack of abnormal x-ray or imaging reports were not clear and convincing reasons for rejecting Plaintiff's testimony.

### e. Objective medical evidence.

Generally, "conflicts between a [claimant's] testimony of subjective complaints and the objective medical evidence in the record" can constitute "specific and substantial reasons that undermine . . . credibility." Morgan, 169 F.3d at 600. The Ninth Circuit stated, "While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001); see also Burch, 400 F.3d at 681 ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."); SSR 96-7p (the ALJ "must consider the entire case record, including the objective medical evidence" in determining credibility, but statements "may not be disregarded solely because they are not substantiated by objective medical evidence").

Here, the ALJ did not base his decision solely on the fact that the medical record did not support the degree of symptoms alleged by Plaintiff. As a result, the objective medical evidence was a relevant factor in determining Plaintiff's credibility. However, in citing to the medical evidence as part of a credibility determination, it is not sufficient for the ALJ to make a general statement that the testimony is contradicted by the record. Holohan v. Massanari, 246 F.3d 1195,

1208 (9th Cir. 2001) ("general findings are an insufficient basis to support an adverse credibility determination"). Rather, the ALJ "must state which pain testimony is not credible and what evidence suggests the complaints are not credible." Dodrill, 12 F.3d at 918; see also Holohan, 246 F.3d at 1208 ("the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony").

In this case, the ALJ failed to identify which evidence supported his determination that Plaintiff's testimony was not credible. First, the ALJ noted that Plaintiff claimed "disabling low back pain, neck pain, shoulder pain, hand pain, knee pain, and leg pain." (AR at 17.) However, the ALJ did not refer to any specific evidence that undermined this testimony. Instead, the ALJ briefly mentioned Plaintiff's muscular appearance and lack of assistive devices at the administrative hearing. (Id. at 17.) The ALJ did not explain why Plaintiff's pain was inconsistent with his alleged muscular physique. Further, in contrast to the ALJ's observations, the hearing transcript reflects that Plaintiff wore a leg brace to the administrative hearing to support himself. (Id. at 34.)

Second, the ALJ made several references to Plaintiff's testimony that he lies down "most" of the day. (Id. at 17-18.) However, Plaintiff did not testify that he lies down most of the day. Plaintiff testified that he lies down four to six times a day, for fifteen to twenty minutes at a time, between 6:00 a.m. and 8:00 p.m. (Id. at 34.) This would suggest that Plaintiff lies down, at most, for approximately two hours in a fourteen hour period. Moreover, other than his incredulity at Plaintiff's testimony, the ALJ did not refer to any specific evidence to refute this testimony. Further, the ALJ did not provide any citations to the medical record that did not support Plaintiff's reported symptoms. Instead, the ALJ again relied on his personal observations of Plaintiff's alleged muscular physique and Plaintiff's alleged failure to report his need to lie down to his doctors. (Id. at 18.) However, the record reflects that Plaintiff reported numerous limitations to his physicians.

1   For example, Dr. Lynn Wilson, a consultative examining physician, noted:

> [Plaintiff] currently indicates that he has some difficulty dressing himself including putting on his shoes and socks. He says when he bends over at the waist to put on his shoes and socks, he feels the pain in his upper back and neck. He says he feels some discomfort in the right side of his neck and right shoulder when he brushes his hair or combs his hair. He says that he has a lot of difficulty bathing himself and washing and drying himself. He feels some discomfort. Apparently, he has some symptoms of pain in his neck, upper back, and lower back at times. He says he has some difficulty brushing his teeth, cutting his food, and lifting a glass to his mouth. He says he has difficulty opening a new milk carton, preparing food, and writing a note. He says he has difficulty watching television. He says he has some difficulty climbing a flight of 10 steps, working on a flat ground, reclining or rising from a chair, running errands, doing light housework, or feeling what he touches. He says he has some difficulty shopping, getting in and out of a car, and sleeping.

(Id. at 254.)

Plaintiff made similarly detailed statements to Dr. Wilson about his limitations, or lack thereof, during Dr. Wilson's prior examinations of him. (Id. at 279, 309.) Granted, Plaintiff did not mention that he lies down all day. It is possible, however, that he did not report to his physicians that he lies down all because he does not, in fact, lie down all day.

Accordingly, the Court finds that the ALJ's reliance on the alleged lack of support for Plaintiff's symptoms in the objective medical evidence is not a clear and convincing reason to reject Plaintiff's testimony.

/ / /

/ / /

### f. Conclusion.

Based on the foregoing, the Court finds that the ALJ committed legal error because he did not provide clear and convincing reasons for rejecting Plaintiff's testimony.[5]

## D. This Case Should Be Remanded for Further Administrative Proceedings.

The law is well established that remand for further proceedings is appropriate where additional proceedings could remedy defects in the Commissioner's decision. Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). Remand for payment of benefits is appropriate where no useful purpose would be served by further administrative proceedings, Kornock v. Harris, 648 F.2d 525, 527 (9th Cir. 1980); where the record has been fully developed, Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); or where remand would unnecessarily delay the receipt of benefits, Bilby v. Schweiker, 762 F.2d 716, 719 (9th Cir. 1985).

Here, the Court concludes that further administrative proceedings would serve a useful purpose and remedy the administrative defects discussed above.

///
///

---

[5] The Court does not address the remaining issues raised by Plaintiff. However, upon remand, the ALJ may need to consider these other issues. Specifically, with respect to Plaintiff's contention that the ALJ failed to properly consider the opinion of Dr. Sanchez (JS at 21-25), the Court notes that Dr. Sanchez diagnosed Plaintiff with poliomyelitis (AR at 676-77, 679) and imposed functional limitations based on this condition (id. at 726-29). Dr. Sanchez's opinion, together with Dr. Wilson's statements in his report (id. at 253), suggest that Plaintiff suffered from poliomyelitis. As discussed above, it is not clear the extent to which, if any, the ALJ considered this at step two. The ALJ may need to consider whether it is necessary to obtain additional records regarding Plaintiff's poliomyelitis to make a sufficient step two finding.

## IV.
## **ORDER**

Pursuant to sentence four of 42 U.S.C. § 405(g), IT IS HEREBY ORDERED THAT Judgment be entered reversing the decision of the Commissioner of Social Security and remanding this matter for further administrative proceedings consistent with this Memorandum Opinion.

Dated: September 7, 2011

HONORABLE OSWALD PARADA
United States Magistrate Judge